THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRACY POSEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action Number |
| | ) 2:17-cv-01462-AKK |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Tracy Posey brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Posey worked as a fast food worker and cook until she stopped working in March 2014 due to her alleged disability. Doc. 7-3 at 43. Posey filed her application for Disability Insurance Benefits ("DIB") on September 10, 2014, asserting that she suffered from a disability beginning on March 1, 2014, due to

status post endocarditis and aortic value replacement, obstructive pulmonary disease, lumbar degenerative disc disease, and major depressive disorder. Doc. 7-7 at 9. After the SSA denied her application, Posey requested a formal hearing before an ALJ. Doc. 7-6 at 4, 19. Ultimately, the ALJ entered a decision finding that Posey was not disabled. Doc. 7-3 at 51. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. *Id* at 2. Having exhausted her administrative remedies, Posey filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 11.

## II. Standard of Review

First, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

2

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Second, federal courts review the SSA's conclusions of law de novo, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.*

Finally, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

### III. Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is doing substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and

4

> (5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that Posey satisfied step one because she had not engaged in substantial gainful activity since March 1, 2014. Doc. 7-3 at 43. At step two, the ALJ found that Posey has "severe impairments" caused by status-post endocarditis and aortic valve replacement, chronic obstructive pulmonary disease, lumbar degenerative disc disease, and major depressive disorder. *Id.* (citing 20 CFR 404.1520(c) and 416.920(c). At step three, the ALJ concluded that Posey's impairments did not meet the severity or medically equal the severity of one of the impairments listed in 20 CFR Pt. 404, Subpt. P, App. 1, § 12.04 for affective disorders and § 12.06 for anxiety-related disorders. *Id.* at 44. Next, the ALJ determined Posey's residual functional capacity ("RFC") and found that Posey can

5

"perform a range of work at the light exertional level" with limitations on postural maneuvers, instructions, climbing, extreme temperatures, and exposure to pulmonary irritants or moving machinery. *Id.* at 45. (citing 20 CFR 404.1529 and 416.929). Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Posey could not return to her past relevant work as a fast food worker, laborer, and cook. *Id.* at 50. The ALJ then proceeded to step five, where based on Posey's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Posey is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including work as a marker, sales attendant, document preparer, and table worker. *Id.* at 51. Therefore, the ALJ concluded that Posey was not disabled from the alleged onset date through the date of her decision.

## V. Analysis

On appeal, Posey argues that the ALJ failed to properly evaluate (or alternatively, failed to discredit) Posey's reports of disabling pain and that the ALJ's determination of her RFC was not supported by substantial evidence. Doc. 11 at 10-12. In reviewing the ALJ's opinion, the court finds that the ALJ properly discredited Posey's subjective pain testimony and weighed the medical record in the RFC finding, and that the ALJ's decision is due to be affirmed.

A. <u>Whether the ALJ Erred by Finding Posey's Pain Testimony Unsupported and Lacking Credibility</u>

Posey argues that the ALJ erred by rejecting her subjective complaints of pain resulting from her chronic obstructive pulmonary disease (COPD) and congestive heart failure. Doc. 11 at 10-11. A plaintiff alleging disability because of pain must meet additional criteria to prevail. This three-part "pain standard"[1] requires (1) "evidence of an underlying medical condition," and either (2) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" *or* (3) evidence that the "objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Marbury v. Sullivan,* 957 F.2d 837, 839–40 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").

At issue here is the ALJ's finding that although Posey's impairments could reasonably cause pain and discomfort, her conditions are "not as severe as alleged." Doc. 7-3 at 49. Posey argues that the ALJ failed to explicitly discredit any of Posey's testimony, including complaints about shortness of breath, lower

---

[1] *See Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

back pain, chest discomfort, and depression/fatigue. In reaching a decision, the ALJ must consider "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how . . . symptoms affect [the claimant]." 20 C.F.R. § 404.1529. However, because a claimant has "voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 416.920(c). For the reasons stated below, the court finds that Posey has failed to support her "allegations of pain with objective medical evidence from an acceptable medical source that shows [she has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529.

    1. Shortness of Breath

"The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding." *Ring v. Berryhill*, 241 F. Supp. 3d 1235, 1245 (N.D. Ala. 2017), *aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r,* 728 F. App'x 966 (11th Cir. 2018). Although the "credibility determination does not need to cite particular phrases or formulations . . . [,] it cannot merely be a broad rejection that is not enough to enable the reviewing court to conclude that the ALJ considered the medical

condition as a whole." *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). A review of the record here shows that the ALJ considered the medical record which often contradicted or did not support Posey's testimony about experiencing chronic shortness of breath. The ALJ cited to Posey's X-rays which showed that, despite a diagnosis of bronchitis and COPD, Posey's breathing remained "unlabored" during the relevant period and "lung auscultation elicit[ed] no wheezing, rhonchi, rales, or rubs." Docs. 7-3 at 47; 7-11 at 75. In addition to the X-rays, other medical reports in the record support the ALJ's conclusion: (1) Dr. Patricia Sanders noted that despite "patchy densities" in Posey's lungs there were also improvements and no new abnormalities in chest examinations and pulmonary edema, doc. 7-9 at 5-15; (2) Dr. Hrudaya Nath noted improvements in Posey's bilateral pulmonary edema, *id.* at 18; (3) Dr. Louis A. Brunsting III conducted a physical exam and noted that Posey had equal breath sounds, "symmetrical chest wall expansion," and "normal peripheral perfusion," doc. 7-9 at 24; (4) Dr. Bobby Lewis noted in a reevaluation that Posey's "lungs are clear to auscultation, respirations are non-labored, breath sounds are equal, [and] . . . labs came back unremarkable," doc. 7-10 at 5-6; (5) Dr. Frank Seghatol-Eslami noted that her "lungs are clear to auscultation, respirations are non-labored, [and] breath sounds are equal," doc. 7-11 at 27-28; and (6) Dr. Lin Huichuan noted that Posey had no shortness of breath and Posey denied "any chest pain or problems," doc. 7-

12 at 59-60. Accordingly, the record supports the ALJ's conclusion that Posey's allegations of shortness of breath were not as severe as Posey alleged.

2. Lower Back Pain

Similarly, the ALJ properly examined the medical evidence to discredit Posey's testimony about lower back pain. The ALJ noted that Dr. Sarah Rustin reviewed Posey's MRI and found "no acute abnormality of the lumbar spine, . . . no evidence of abscess, . . . and only mild multilevel degenerative disease." Doc. 7-13 at 2. The record shows that although Posey was diagnosed with sciatica, she was prescribed with Flexeril, Methocarbamol, Neurontin, and Norco and reported no complications or side effects. Doc. 7-3 at 47. After Posey slipped and fell on the tile floor while doing laundry, she went to UAB Hospital where she experienced throbbing and burning in her lower back, but Dr. Brittany Lamb noted that her pain was "minimal in severity," "ambulation did not exacerbate her symptoms," and there was "no swelling or deformities." Doc. 7-13 at 30. During subsequent examinations after her accident, Posey displayed a full range of motion in her cervical and thoracic spine. *Id* at 2-11. And, during the hearing, Posey testified about doing household activities and shopping. Doc. 7-4 at 14-15. Accordingly, the court finds that substantial evidence supports the ALJ's finding that Posey's "reported levels of disabling pain . . . conflicted with other evidence in the record." *Loveless v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 866, 869–70 (11th Cir. 2017).

### 3. Chest Discomfort

The ALJ also found that Posey's subjective complaints of chest discomfort were unsupported by the medical evidence. To support this finding, the ALJ cited to medical records from UAB Hospital indicating that Posey experienced some chest pain but was doing "quite well" and her "intermittent chest pain was moderate in severity." Doc. 7-3 at 46-47. The ALJ also noted that Posey's echocardiogram indicated that her "right ventricular systolic functioning was normal." *Id.* Other medical evidence in the record also belies Posey's complaints of chest pain – Dr. John Owens found on several occasions that Posey's "lungs are grossly clear," she had "no discrete pleural fluid collection or evidence of pneumothorax," and there was "no evidence of acute chest pathology," docs. 7-11 at 13; 22, and Dr. Seghatol-Eslami noted that Posey had a "normal range of motion" with "no acute distress," *id.* at 25-28. Accordingly, the record supports the ALJ's determination that Posey's complaints of disabling chest discomfort were not credible.

### 4. Fatigue/Depression

A review of the record also shows that the ALJ properly rejected Posey's subjective complaints of depression symptoms including sadness, irritability, frequent crying spells, low energy, motivational levels, and sleep disturbances. Doc. 7-3 at 48. The ALJ noted that Posey took Praxil and experienced no complications or side effects from the treatment. *Id.* The ALJ also gave partial

11

weight to Dr. John Haney, a one-time examining source, finding that Dr. Haney's assessment was based on Posey's subjective complaints instead of objective medical evidence. *Id.* During a psychological exam, Dr. Haney noted that Posey was "sad and moderately anxious" but she was also "alert, polite, cooperative" and "experienced no psychotic symptoms . . . such as auditory or visual hallucinations, delusions, [or] ideas of reference or grandiosity." Doc. 7-11 at 74. Posey denied suicidal thoughts and also indicated that her depression stemmed from recent life events including her physical health problems, death of her mom, and losing her home. *Id.* Thus, Dr. Haney concluded that Posey's "ability to function in most jobs appeared moderately impaired" and her "psychological condition would improve with ongoing successful psychiatric treatment." *Id.*

Dr. Haney's assessment is consistent with other psychological assessments in the record. For example, a month after Dr. Haney met with Posey, Dr. Peter Sims, whose opinion the ALJ gave partial weight, provided a mental residual functional capacity assessment and noted that Posey could remember simple instruction and is capable of making basic work related decisions. Doc. 7-3 at 49. Lastly, a primary registered nurse noted that Posey had no thoughts of harming herself, was oriented, and was cooperative. Doc. 7-12 at 40. Accordingly, the court finds that the ALJ properly considered the entire record and stated specific reasons for assigning weight to the opinions of the medical authorities regarding Posey's complaints of depression.

B. <u>Whether the ALJ erred by failing to properly weigh Posey's medical records in the RFC determination</u>

Posey also argues that the ALJ's determination of her RFC was unsupported by the substantial medical evidence. The regulations define RFC as the most work a person can do despite any limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a)(1). When assessing a person's RFC, the ALJ must consider "all medically determinable impairments" and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2). When assessing a person's physical ability at this stage, the ALJ assesses "the nature and extent of [a person's] physical limitations" and the capacity for "work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b) (noting that a limited ability to sit, stand, walk, lift, carry, push, pull may reduce a person's ability to do past or other work). Critically, "[a] claimant's [RFC] is a matter reserved for the ALJ's determination . . ." *Beegle v. Soc. Sec. Admin. Comm'r*, 482 Fed. Appx. 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)). In making this determination, the ALJ is fully qualified to evaluate the medical evidence and is not required to rely on medical opinion evidence regarding a claimant's capabilities. *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007) (explaining that the ALJ is free to evaluate physician's opinions regarding the claimant's capabilities "in light of the other evidence presented") (citations omitted).

Here, Posey claims that she is unable to work due to complications from endocarditis, aortic valve replacement, and lumbar degenerative disc disease. Doc. 11 at 11-12. In reaching Posey's RFC finding, the ALJ noted that Posey's testimony about her inability to work was inconsistent with her daily activities. For example, although Posey testified about having trouble dressing, bathing, and driving, she also indicated that she has no problems with maintaining a regular, basic daily schedule, shopping, using money and managing finances, concentration, and following simple instructions. Doc. 7-5 at 9, 22. Posey also indicated that her daily routine includes doing laundry, washing dishes, dusting, walking around the block, watching television, making lunch, and doing housework. Doc. 7-8 at 19. She indicated that she prepares meals daily such as sandwiches, eggs, bacon, and frozen meals with the help of her son, *id.* at 21, that her hobbies and interests include reading, watching TV, and playing cards with her son, *id.* at 23, and that she does not have problems with written instructions or spoken instructions and gets along with authority figures, *id.* at 24-25. The record supports the ALJ's findings that Posey's activities belie her contention that she is unable to work.

Moreover, the ALJ consulted the VE in reaching his decision on Posey's RFC. The VE offered expert testimony in response to hypothetical questions about a person of Posey's age, education, work experience, and medical impairments. Doc. 7-3 at 52-56. The VE concluded that Posey can perform the job of a marker,

cashier, sales attendant, document prepare, stuffer, or table worker. *Id.* at 51. Posey contends that the VE failed to consider jobs that would allow her to take two unscheduled breaks outside of normal break times or the fact that she would miss three full days of work each month. Docs. 7-8 at 22-24; 11 at 11-12. To the extent that these are limitations a physician placed on Posey, Posey has failed to direct the court (or the ALJ for that matter) to the relevant record.[2] The ALJ's hypotheticals must be based on a claimant's actual limitations. *See* 20 CFR § 404.1545(a)(1) (The ALJ must "consider all of [the claimant's] medically determinable impairments" of which the ALJ is aware.). Here, the ALJ cited to an assessment performed by Dr. Richard Whitney, whose opinion the ALJ afforded significant weight given his familiarity with the disability process, expertise in the field, and his opinion's consistency with the record. Doc. 7-3 at 47-48. Dr. Whitney noted that Posey could lift and carry up to ten or twenty pounds, walk, sit, or stand for up to six hours in a workday, engage in unlimited pushing and pulling, climb ramps or stairs, and frequently stoop or kneel. *Id.* at 47. Dr. Whitney also noted that Posey must avoid exposure to extreme temperatures, humidity, fumes, odors, poor ventilation, and hazardous machinery. *Id.* The ALJ noted that Dr. Whitney's observations were consistent with the medical record which reflected that Posey

---

[2] Although Posey's attorney asked the VE during the hearing about these limitations, the medical records do not support or confirm whether Posey in fact has such limitations. Moreover, the ALJ posed hypothetical questions regarding Posey's background and limitations, including alternating between sitting and standing. *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (noting that the ALJ adequately analyzed and described the claimant's functional capacity because the hypotheticals included limitations on standing, sitting, and walking).

had mild multilevel degenerative disease, a normal Doppler flow pattern based on an echocardiogram of her cardiovascular condition, no regional wall motion abnormalities, and no acute musculoskeletal or respiratory deficits. *Id*. Accordingly, the court finds that the ALJ properly considered the medical record and Posey's inconsistent testimony in the RFC determination. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (affirming ALJ determination that the claimant's claims of work impairment were unsupported by her ability to care for herself and manage daily activities of childcare and housework).

## **CONCLUSION**

Based on the foregoing, the court concludes that the ALJ's determination that Posey is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 11th day of January, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE